1  Richard J. (Rex) Burch (admitted *pro hac vice*)
   Texas Bar ID. 24001807
2  **BRUCKNER BURCH PLLC**
   8 Greenway Plaza, Suite 1500
3  Houston, TX 77046
   713-877-8788 (Telephone)
4  713-877-8065 (Facsimile)

5  (additional counsel on signature page)

6  ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS

7  **UNITED STATES DISTRICT COURT**

8  **CENTRAL DISTRICT OF CALIFORNIA**

9

10  MICHEAL MEYER, an individual, on behalf of all others similarly situated,

11

12                    Plaintiffs,
                        vs.

13

14  LOWE'S HIW, INC., a Washington Corporation; and DOES 1 through 50 inclusive,

15

16

17                              Defendants.

18  ZACKARY TORRES and ALEX CARDENAS, individually and on behalf of others similarly situated,

19

20                    Plaintiffs,
21                        vs.

22  LOWE'S HIW, INC., a Washington Corporation; and DOES 1 through 10 inclusive,

23

24

25                              Defendants.

26

27

28

Consolidated Case No.:  **CV-09-06962 DDP (RZx)**

Consolidated with Case No.:  CV-09-08354 DDP (RZx)

**PLAINTIFFS' MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

Date:          August 29, 2011
Time:   10 a.m.
Place:          Courtroom No. 3 – 2nd Fl.
Judge:  Hon. Dean D. Pregerson

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

I.      INTRODUCTION ..................................................................................... 1

II.     PROCEDURAL BACKGROUND ............................................................ 3

    A.   THE COURT PRELIMINARILY APPROVED THIS
        SETTLEMENT. .................................................................................. 3

    B.   THE SETTLEMENT ADMINISTRATOR MAILED CLASS
        NOTICE AND THE CLASS RESPONDED FAVORABLY ................ 3

    C.   TIME AND EXPENSES OF COUNSEL FOR PLAINTIFFS ............... 4

    D.   FINAL JUDGMENT AND PAYOUT SCHEDULE. ........................... 5

III.    ARGUMENT ............................................................................................ 5

    A.   STANDARD OF REVIEW BY THE COURT. .................................... 5

    B.   THE CLASS RECEIVED ADEQUATE NOTICE. ............................... 6

    C.   THE SETTLEMENT IS PRESUMED TO BE FAIR. .......................... 7

    D.   THE VALUE OF THE SETTLEMENT FAVORS FINAL
        APPROVAL. ....................................................................................... 7

    E.   SETTLEMENT AVOIDS THE RISKS INHERENT IN
        CONTINUED LITIGATION. .............................................................. 8

    F.   THE EXPERIENCE AND VIEWS OF COUNSEL FAVOR
        FINAL APPROVAL. .......................................................................... 10

    G.   THE CLASS REPRESENTATIVES' SERVICE AWARDS
        ARE WELL-JUSTIFIED. .................................................................. 10

IV.     CONCLUSION ....................................................................................... 11

# TABLE OF AUTHORITIES

## CASES

Bell v. Farmers Ins. Exchange, 115 Cal. App. 4th 715, 726 (2004) .......................... 11

Cartt v. Superior Court., 50 Cal. App. 3d 960, 973-974 (1975) ................................. 6

Dunk v. Ford Motor Co., 48 Cal. App. 4th 1794, 1801 (1996) ........................... 6, 7, 8

Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001) ...................... 10

Kullar v. Foot Locker Retail, Inc., 168 Cal. App.4th 116, 129-30, 32 (2008) ............. 7

Labor Code §§ 218.5, 1194, 2804 ............................................................................. 9

Lealao v. Beneficial Cal., Inc., 82 Cal. App. 4th 19, 52 (2000) ................................. 6

Mendoza v. Tucson School Dist. No. 1, 623 F.2d 1338, 1351 (9th Cir. 1980) ........... 6

Neary v. Regents of Univ. of Cal., 3 Cal. 4th 273, 277-81 (1992) ............................. 6

Officers for Justice v. Civil Serv. Comm'n. of the City and County of San Francisco,
        688 F.2d 615, 625 (9th Cir. 1982) ............................................................... 5, 6, 10

Thornton v. East Texas Motor Freight, 497 F.2d 416, 420 (6th Cir. 1974) .............. 11

Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir. 1976) ........................ 10

Van Vranken v. Atlantic Richfield Co., 901 F.Supp. 294 (N.D. Cal. 1995) .............. 10

Wershba v. Apple Computers, Inc., 91 Cal. App. 4th 244, 234-35 (2001) ................. 5

## CALIFORNIA STATUTES

Cal. Rule of Court 3.769 ...................................................................................... 5, 6

Civ. Code § 1781(f) ................................................................................................. 5

## OTHER AUTHORITIES

Manual for Complex Litigation (4th ed. 2004) § 21.61 ..................................... 6, 8, 10

Newberg on Class Actions § 11.41 (4th ed. 2002) .................................................. 6, 9

Tiffany Allen, Anticipating Claims Filing Rates in Class Action Settlements, Class
        Action Perspectives (Rust Consulting, Nov. 2008) ........................................... 4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL
OF CLASS SETTLEMENT

# I.   INTRODUCTION

Plaintiffs Alex Cardenas, Michael Meyer and Zachary Torres ("Plaintiffs" or "Class Representatives") move for final approval of the Class Action Settlement Agreement (hereinafter "Settlement Agreement" or "Settlement") entered into with Defendant Lowe's HIW, Inc. ("Defendant" or "Lowe's") to resolve overtime, meal periods, and related claims on behalf of a class of Lowe's Loss Prevention Managers in California.  The class period covers the time period of July 8, 2005 through January 31, 2011.  The Settlement affords a substantial recovery on Settlement Class Members' overtime claims, resulting in an average pay out of over $9,266 per claimant.

The essential terms of the Settlement are as follows:

1.   Settlement Fund—Lowe's agreed to pay up to $2,950,000 ("Settlement Fund") to pay all class claims; Plaintiffs' claims and Class Representatives service payment; attorneys' fees and litigation expenses to Class Counsel; and settlement administration costs.  In addition to the Settlement Fund, Lowe's will pay the employers' share of payroll taxes on the wage portions of the settlement awards.

2.   Class Representatives Payment—In consideration of their service as representatives for the class, Class Representatives will each receive $5,000 in addition to the payments for resolution of their overtime, meal period, and related claims.[1]

3.   Payment to the California Workforce Development Agency— Lowe's will pay $3,750 of the Settlement Fund to the California Labor & Workforce Development Agency as its portion of the applicable PAGA penalties.

---

[1] Each Class Representative is also receiving $5,000 in exchange for signing an individual settlement agreement that, unlike the Class Members' release, provides for a general release of claims against Lowe's.

4.      Class Counsel's Fee and Expense Payment—30% of the
        Settlement Fund will be paid to Class Counsel as compensation
        for their services to the Settlement Class and $24,416.02 as
        reimbursement of their out-of-pocket litigation expenses.  The
        Settlement Administrator's fee of $10,500 will also be covered by
        the Settlement Fund.  Lowe's will pay attorney fees and expense
        reimbursement payments directly to Class Counsel and the
        settlement administration fees to the Settlement Administrator.

 5.      Settlement Administration—CPT Group, Inc., as the Court-
        appointed Settlement Administrator, distributed the Class
        Settlement Notice to each of the Settlement Class Members,
        including an individual estimate of settlement payouts to each
        Settlement Class member.  It has also resolved any disputes over
        the weeks worked in the class.  Upon final approval and funding
        of the Settlement by Lowe's, CPT Group will draw and distribute
        checks to Class Counsel the Settlement Class members.

 6.      Scope of Release and Final Judgment--The release set forth in the
        Settlement corresponds to the factual allegations in the operative
        complaint, releasing claims for wage and hour violations such as
        overtime, minimum wage, meal period pay, waiting time
        penalties, itemized pay statement penalties, and related UCL
        claims.  Upon final and full payment of the Settlement Fund, the
        parties will seek a dismissal of the entire case with prejudice and
        final judgment on all of the class claims.

As detailed below, the parties complied with the Court's order of preliminary
approval of this Settlement.  **The Class has embraced this settlement by filing
claims, and not a single class member has either objected to the Settlement or**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL
OF CLASS SETTLEMENT

1   **opted out.**  In sum, the Settlement Agreement is fair, reasonable, and adequate.  The

2   Court should therefore grant final approval based on the terms of the Settlement and

3   the absence of any opposition thereto.

4   ## II.   PROCEDURAL BACKGROUND

5   **A. The Court Preliminarily Approved This Settlement.**

6   After more than 1.5 years of litigation, the parties reached a proposed

7   Settlement that would resolve the wage and hour claims of Lowe's Loss Prevention

8   Managers for up to $2,950,000.  On March 28, 2011, the Court granted Plaintiffs'

9   motion for preliminary approval of the Settlement.   See <u>Torres</u> Dkt. No. 61.  That

10  Order, among, other things: (1) approved distribution of a class notice; (2) provided

11  at least 45 days for class members to opt out or object to the settlement; and (3)

12  scheduled the final approval hearing for August 28, 2011.  The Court also

13  preliminarily approved the following payments from the Settlement Fund: $5,000

14  payments to each of the three Class Representatives for their service to the class and

15  $5,000 for signing a broad release; Class Counsel fees of thirty percent (30%) and

16  expenses of up to $25,000; and settlement administration costs of $10,500.  In so

17  doing, the Court determined that the class action settlement set forth in the

18  Settlement Agreement and described above was within the range of reasonableness

19  of a settlement that could ultimately be given final approval, appeared to be the

20  product of intensive, non-collusive, arms' length negotiations between well-informed

21  counsel, and thus presumptively valid, and that, on a preliminary basis, the

22  $2,950,000 settlement fund appeared to be fair and reasonable to all Class Members.

23  **B. The Settlement Administrator Mailed Class Notice and the Class Responded Favorably.**

24  The Settlement Administrator, CPT Group, distributed class notice along with

25  the approved forms ("Notice Packets") by mail on April 28, 2011 to 269 class

26  members.[2]  Originally, 48 Notice Packets were returned by the Post Office, seven of

27

28  _____

[2] Declaration of Abel E. Morales (Settlement Administrator), ¶ 6, attached as Exhibit 1 to supporting Declaration of Richard J. (Rex) Burch ("Burch Decl.") filed herewith.

which had a forwarding address.  CPT Group performed a skip trace using the comprehensive Accurint database in an effort to locate a better address for these Class Members.[3]  Ultimately, only 12 Notice Packets were believed to be undeliverable. [4]  The Notice Packets gave the Class until June 12, 2011 to objection to the Settlement, and until June 27, 2011 to opt out.[5]

**Not one** class member filed an objection or returned an election to opt out of the settlement.[6]  However, more than 141 Class Members made claims for more than 66% of the available funds.[7]  While 3 of these claims have technical deficiencies, CPT Group is working to cure the deficiencies[8].  Assuming these issues are promptly resolved, a total of $1,336,671.55 will be distributed to the Class, an average of nearly $9,479.94 per Class Member.  The high claims rate[9] and the absence of any objection whatsoever to any aspect of the Settlement, demonstrates the Class is in favor of final approval.

**C. Time and Expenses of Counsel for Plaintiffs.**

As set forth in Plaintiffs' Motion for Approval of Attorney's Fees and Expenses (See Dkt. Nos. 61 &62), counsel for Plaintiffs had devoted more than 1056 hours investigating, litigating, negotiating, and preparing the Settlement for Court approval as of June 3, 2011.  This amounted to a combined lodestar of over $507,000 based on market hourly rates for counsel and their staff.  See Dkt. No. 62 and the attachments thereto.  Class counsels' combined lodestar continues to rise, as Class Counsel devotes more hours preparing for the final approval hearing (including the drafting of this motion), monitoring and ensuring the Settlement is administered

---

[3] *Id.,* ¶ 9.
[4] *Id.* ¶.
[5] See *Torres* Dkt. No. 61.
[6] Morales Decl. ¶¶ 12 & 15.
[7] *Id..* at ¶ 22.  This includes 3 claims that are currently deficient based on technical grounds.  Even if these claims are not cured, 63.6% of the settlement fund available for distribution will be paid to Class Members.  *Id.,* at ¶ 19.
[8] *Id.*, at ¶¶ 18-21.
[9] Tiffany Allen, *Anticipating Claims Filing Rates in Class Action Settlements*, Class Action Perspectives (Rust Consulting, Nov. 2008) (claim rates in employment class action may range as low as 20%).

pursuant to the Court's orders, and preparing the necessary filings for final judgment. Not a single Class Members objected in any way to the requested fee. Therefore, for the reasons set forth in the Motion for Approval of Attorney's Fees and Expenses, the requested fees and expenses are appropriate and should be allowed as part of the Final Approval Process.

**D. Final Judgment and Payout Schedule.**

Lowe's will wire the Settlement Fund and settlement administration fee to the Settlement Administrator within 10 business days after the date on which the time to challenge any aspect of this Settlement by appeal has lapsed, provided that no appeal has been filed.[10]  The Settlement Administrator will then be responsible for depositing those funds in appropriate accounts from which it will issue class award checks.  It will also mail those checks to the Settlement Class Members and issue all appropriate IRS Forms.  The Settlement Administrator will pay Class Counsel its fee and litigation expenses and Class Representatives their settlement share and service award on the same schedule.

## III.   ARGUMENT

**A.     Standard of Review by the Court.**

Court approval is required for the settlement of a class action.  See Fed. R. Civ. Pro. 23(e).  The court has broad discretion in reviewing a proposed class settlement for approval.  See Officers for Justice v. Civil Serv. Comm'n. of the City and County of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982); Wershba v. Apple Computers, Inc., 91 Cal. App. 4th 244, 234-35 (2001).  Approval of a class action settlement may be reversed only upon a strong showing of clear abuse of discretion. See Id.

This Court now must make a final determination whether the proposed settlement set forth in the Settlement Agreement is fair, reasonable, and adequate.

---

[10] If an appeal is filed, payment will be made within 10 business days after a final resolution of all appeals that result in the upholding of the Settlement.  See Torres Dkt. No. 59-2 at p. 14-15.

1    Officers for Justice, 688 F.2d at 625; Manual for Complex Litigation (4th ed. 2004)

2    (hereinafter "Manual"), § 21.61 at 308.  Final approval is merited when "the interests

3    of the class are better served by the settlement than by further litigation."  Manual §

4    21.61 at 309.  The law favors settlement, particularly in class actions and other

5    complex cases where substantial resources can be conserved by avoiding the time,

6    cost, and rigors of formal litigation.  See Officers for Justice, 688 F.2d at 625; Neary

7    v. Regents of Univ. of Cal., 3 Cal. 4th 273, 277-81 (1992); Lealao v. Beneficial Cal.,

8    Inc., 82 Cal. App. 4th 19, 52 (2000); Newberg on Class Actions § 11.41 (4th ed.

9    2002) (and cases cited therein).

10          While the Court has broad discretion, its role is limited.  It must make a

11   reasoned judgment that the agreement is not the product of fraud or overreaching by,

12   or collusion between, the negotiating parties, and that the settlement, taken as a

13   whole, is fair, reasonable and adequate to all concerned.  See Officers for Justice,

14   688 F.2d at 625; Manual § 21.61 at 309 ("The judicial role in reviewing a proposed

15   settlement is critical, but limited to approving the proposed settlement, disapproving

16   it, or imposing conditions on it.  The judge cannot rewrite the agreement.").

17   Accordingly, "[d]ue regard should be given to what is otherwise a private consensual

18   agreement between the parties."  Dunk v. Ford Motor Co., 48 Cal. App. 4th 1794,

19   1801 (1996).

20   **B. The Class Received Adequate Notice.**

21          The Court-approved class notice adequately protects the due process rights of

22   the absent class members.  The class notice must explain the settlement and approval

23   procedures, and must be reasonably calculated to apprise class members of the class

24   settlement.  See Fed. R. Civ. Pro. 23(c)(2)(B); Mendoza v. Tucson School Dist. No.

25   1, 623 F.2d 1338, 1351 (9th Cir. 1980).  In its March 28, 2011 Order, the Court

26   found that the Notice Packets adequately explained the settlement and approval

27   procedures.  The means of notice was also adequate, as the Notice Packets were sent

28   to the last known addresses on file with Lowe's for each qualified current and former

1  employee.  Diligent efforts were made to locate all potential class members.  These

2  notices thus reasonably apprised class members of the settlement and should be

3  approved as being adequate.

4  **C. The Settlement Is Presumed to Be Fair.**

5       This settlement is presumptively fair and should be approved.  A court should

6  presume a class settlement is fair where "(1) the settlement is reached through arm's-

7  length bargaining; (2) investigation and discovery are sufficient to allow counsel and

8  the court to act intelligently; (3) counsel is experienced in similar litigation; and (4)

9  the percentage of objectors is small."  <u>Dunk</u>, 48 Cal. App. 4th at 1802.  Here, as

10  described in the preliminary approval papers, the settlement negotiations between the

11  parties were extensive and occurred at arms' length, Class Counsel engaged in

12  substantial fact investigation before settling, the parties exchanged data regarding the

13  Class's potential recovery, Class Counsel retained the services of an expert to

14  perform damages calculations, Class Counsel are highly experienced in this type of

15  litigation, and there are no objectors.  The Settlement is thus presumptively fair.

16  **D. The Value of the Settlement Favors Final Approval.**

17       Class counsel engaged in a detailed analysis of the claims, defenses, and

18  Lowe's potential exposure on those claims in the papers offered in support of

19  preliminary approval, affording them an understanding of amount in controversy and

20  potential outcomes of the case.  As discussed below, Plaintiffs evaluated the risks

21  associated with this type of litigation including the risks that the class would be (and

22  remain) certified, as well as the risks on the merits.  However, even considering the

23  "best case" scenario, the recovery is substantial. [11]  <u>See</u> <u>Kullar v. Foot Locker Retail,</u>

24  <u>Inc.</u>, 168 Cal. App.4th 116, 129-30, 32 (2008) (trial court should have sufficient

25  information about the potential value of the case and litigation issues to

26  independently review the reasonableness of the settlement).

27

28

[11]  Declaration of William Harris ("Harris Decl.") filed herewith at pp. 6-8.

1   The average rate of pay for Lowe's Loss Prevention Managers during the

2   relevant period was $20 per hour, yielding an overtime rate of $30 per hour.   The

3   Class Members worked approximately 24,558 weeks during the relevant time period.

4   Lowe's scheduled its Loss Prevention Managers for 48 hours per week though, for

5   purposes of estimating their "best possible day" in court, Plaintiffs used an average

6   of 50 hours per week (*i.e.*, 10 hours of overtime per week).   Thus, Class Counsel

7   would have sought approximately 245,580 hours of overtime at a rate of $30 an

8   hour, or $7,367,400 in unpaid overtime.  Interest on these unpaid wages would

9   approximate $1,694,502.  In addition, because 131 Class Members were former

10  employees, the maximum potential "waiting time penalties" totaled $628,800.   This

11  yielded a likely maximum value of approximately $9,690,702.  Thus, the Maximum

12  Settlement Fund of $2,950,000 represented a recovery of approximately 30.4% of

13  Plaintiffs "best day."[12]

14      This recovery is particularly favorable given significant unresolved factual and

15  legal questions, which could have affected the value of Settlement Class Members'

16  claims had litigation continued.   Of course, class members would have recovered

17  nothing had Lowe's been able to shown that they properly classified them as exempt

18  and/or the class had not been certified.   In light of this risk analysis, the absence of

19  any objection to the settlement, the fact that not one class member opted out, and the

20  recovery obtained, this Settlement is of great value to the Settlement Class and well-

21  worthy of final approval.

22  **E. Settlement Avoids the Risks Inherent In Continued Litigation.**

23      When considering approval of this settlement, the Court must weigh the

24  benefits of a certain and timely payout to the class against the risks inherent in

25  continued litigation.  <u>See Dunk</u>, 48 Cal. App. 4th at 1801 (class settlement approval

26  process balances the strength of plaintiffs' case, the risk of further litigation,

27  including the risk of maintaining class action status through trial, and the amount

28

---

[12]   Harris Decl. at pp. 6-8

offered in settlement); <u>Manual</u> § 21.62 at 316 (class settlement approval process may consider "the advantages of the proposed settlement versus the probable outcome of a trial, … [and] the probability that the class claims, issues, or defenses could be maintained through trial on a class basis …").

This balancing supports final approval here because the Settlement affords the Class Members substantial relief on their underlying overtime, meal period, and related claims, while avoiding significant litigation risks.  These risks include the fact that Lowe's has legal and factual grounds available to oppose class certification and defend the merits of this action.  While these grounds are described more fully in prior filings, it bears noting that Lowe's *prevailed* in an earlier claim for unpaid overtime wages – by a Loss Prevention Manager in California – by proving the employee was exempt from the overtime requirements of California law.

Further, absent settlement, the parties would, at the very least, have to litigate class certification, motions for summary judgment or summary adjudication, and trial on liability (including multiple exemption defenses) and damages issues, should this matter not resolve.  Appellate issues might also arise.  Thus, this action could continue for several more years before final resolution if the Settlement is not approved.

The potential for protracted litigation, including appeals, is particularly great in this matter, as the propriety of treating Loss Prevention Managers are exempt from the overtime laws present novel issues.  Class counsel are unaware of any court decision holding the exempt classification of Loss Prevention Managers is unlawful under California's Labor Code and wage orders.

While Class Counsel believe the underlying claims could be adjudicated on a class- basis and that the Class would prevail on the merits, they recognize the risks in defending against Lowe's positions.  Resolution of these issues through motion practice, at trial, and/or on appeal would not only delay payment to the class, but also presents risks at each juncture that the class would not recover.  These risks must be

- 9 -

considered in assessing the fairness of the Settlement, which guarantees a substantial recovery from Lowe's.  The Settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits."  Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 950 (9th Cir. 1976); see also 4 Newberg § 11.41 (citing cases).  Because the Settlement provides immediate and substantial relief, without the attendant risks and delay of continued litigation, it warrants this Court's final approval.

**F.  The Experience and Views of Counsel Favor Final Approval.**

Class Counsel support the Settlement as fair, reasonable, and adequate, and in the best interest of the class as a whole, and also believe it is an excellent result for the class, as explained in detail in the preliminary approval papers.  This endorsement is worthy of significant weight given their experience in this type of litigation and detailed knowledge of the strengths and weaknesses of this case.  See Officers for Justice, 688 F.2d at 625.

**G. The Class Representatives' Service Awards Are Well-Justified.**

Courts routinely approve incentive awards to compensate named Plaintiffs for the services they provide and the risks they incur during class action litigation.  See Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001).  See also Manual for Complex Litigation, (4th ed. 2004) § 21.62 fn 971 at 317 (noting that such awards "may sometimes be warranted for time spent meeting with class members or responding to discovery.")  In Ingram v. Coca-Cola, the court approved incentive awards of $300,000 to each named Plaintiffs in recognition of the services they provided to the class by responding to discovery, participating in the mediation process, and incurring the risk in stepping forward on behalf of the class.  See Ingram, 200 F.R.D. at 694.  See also, Van Vranken v. Atlantic Richfield Co., 901 F.Supp. 294 (N.D. Cal. 1995) (approving $50,000 participation award).

In the present case, Plaintiffs came forward and initiated this action on behalf of the entire class, produced documents, assisted counsel in bringing the case and

1    investigating the underlying merits, conferred with counsel on settlement

2    negotiations, and monitored the progress of the litigation.  Moreover, Plaintiffs had

3    regular contact with Class Counsel, conferring on factual matters as they developed.

4    A $5,000 payment fairly compensates them for the substantial assistance provided to

5    Class Counsel, services rendered to the class, and risk incurred.  The class notice

6    explicitly set forth the details of these service award payments; no one objected.  The

7    proposed payments to Class Representatives are therefore appropriate and justified

8    as part of the overall settlement and warrants final approval from this Court.  <u>See</u>,

9    <u>e.g.</u>, <u>Bell v. Farmers Ins. Exchange</u>, 115 Cal. App. 4th 715, 726 (2004) (upholding

10   "service payments" to named Plaintiffs for their efforts in bringing the case);

11   <u>Thornton v. East Texas Motor Freight</u>, 497 F.2d 416, 420 (6th Cir. 1974) ("We also

12   think there is something to be said for rewarding those drivers who protest and help

13   to bring rights to a group of employees who have been the victims of [unlawful

14   employment practices]").

15                          **IV.   CONCLUSION**

16          For all of the foregoing reasons, Plaintiffs respectfully requests that the Court

17   (1) find that the notice of Settlement to the Settlement Class Members was adequate;

18   (2) find that the terms of the Settlement Agreement are fair and reasonable; and (3)

19   grant final approval to the Settlement Agreement.

20   DATED:  August 1, 2011.          Respectfully submitted,

21                                    **/s/ Rex Burch**

22                                    _____

23                                    Richard J. (Rex) Burch (admitted *pro hac vice*)
                                      Texas Bar ID. 24001807

24                                    **BRUCKNER BURCH PLLC**
                                      1415 Louisiana St., Ste 2125

25                                    Houston, TX 77002

26                                    713-877-8788 (Telephone)
                                      713-877-8065 (Facsimile)

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL
OF CLASS SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael Josephson (admitted *pro hac vice*)
Texas Bar ID No. 24014780
**FIBICH, HAMPTON, LEEBRON,**
**BRIGGS & JOSEPHSON, L.L.P.**
1150 Bissonnet
Houston, Texas 77005

William E. Harris, Esq.
**HARRIS & KAUFMAN**
15260 Ventura Boulevard, Suite 2250
Sherman Oaks, CA 91403
(818) 990-1999 (Telephone)

ATTORNEYS FOR PLAINTIFFS AND THE
CLASS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL
OF CLASS SETTLEMENT